Filed 8/7/26  P. v. Newsum CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D086619 |
| Plaintiff and Respondent, | (Super. Ct. No. SCD304914) |
| v. | |
| NICHOLAS HALEY NEWSUM, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County. Robert O. Amador, Judge.  Affirmed.

Nicholas Haley Newsum, in pro. per., and Heather Monasky, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

In September 2024, Nicholas Newsum was arrested for evading a police officer with reckless driving (Veh. Code, § 2800.2, subd. (a)).  A jury trial was held in July 2025.  The jury found Newsum guilty.  Newsum was sentenced to the middle of two years in prison.

Newsum filed a timely notice of appeal.

Appellate counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) indicating counsel has not been able to identify any arguable issues for reversal on appeal. Counsel asks the court to independently review the record for error as mandated by *Wende.*

We advised Newsum of his right to file his own brief on appeal. He has filed a very lengthy supplemental brief. Newsum argues his trial and appellate counsel were both ineffective for failing to argue issues he deemed important. The trial court ordered a competency exam, which was unnecessary because he was competent. The hearing delayed the trial proceedings, violating his right to a speedy trial. Newsum also includes materials about his dealings with law enforcement in a different county, not involving the facts of this case.

Based on the record in this case, Newsum's supplemental brief has not raised any arguable issues for reversal on appeal.

STATEMENT OF FACTS

Appellate counsel has submitted a summary of the evidence at trial regarding the charged offense. We will include that summary here for background information.

"On September 10, 2024, officers Brandon Moreno and Laylanie Arriaga of the San Diego Police Department (SDPD) were on duty, partnered in a patrol vehicle. (5RT 1207-1210, 1252, 1256.) They went to appellant's address on Garber Avenue, having received information that appellant had an outstanding arrest warrant. (5RT 1209-1211.) They sat with lights and sirens off approximately a half mile from appellant's house, waiting for him. (5RT 1258-1259.) Five to ten minutes later, a Tahoe or a "Chevy-looking vehicle" arrived. (5RT 1258.)

"The Tahoe[2] parked on the south curbline of Garber Avenue, in the grass just above the home's driveway. (5RT 1234-1235.) Within 10-15 seconds, the officers tried to engage the driver, driving their patrol vehicle closer. (5RT 1235.) The patrol vehicle's floodlights and a forward-facing red light were lit as the officers approached. (5RT 1213, 1237.) The officers stopped at a 45-degree angle to the Tahoe, in the middle of the street. (5RT 1235-1236.) Moreno tried to get out of the patrol vehicle to approach. (5RT 1236, 1244.)

"Approximately five seconds after the patrol vehicle stopped, the Tahoe took off without anyone alighting from the vehicle, (5RT 1213, 1236), driving right past the officers (5RT 1259). Because of the angle of the street, Arriaga was at a higher elevation looking down, and saw the driver but could not see the rear seats. (5RT 1212, 1237.) Moreno could see that appellant was in the driver's seat and that no one else was in the vehicle. (5RT 1259.) All of the Chevy Tahoe's windows were tinted except the front window. (5RT 1236.)

"After Moreno reentered the patrol vehicle, he made a U-turn to follow the Tahoe. (5RT 1238.) For approximately 10 seconds, Arriaga lost visual of the pursued Chevy Tahoe. (5RT 1238.) From then on, the officers stayed directly behind the Tahoe until the pursuit was terminated. (5RT 1239.)

"The patrol's vehicles lights and sirens were active before the Tahoe left and remained on until the pursuit ended. (5RT 1214, 1220, 1259-1261.) The Tahoe went east on Garber Avenue, failed to stop at a stop sign on Garber Ave and Parkside, turned right, and then failed to stop at the Parkside and Alta View Drive stop sign. (5RT 1214-1215.) The Tahoe turned right, or east, on Alta View Drive, failed to stop at the red light at Alta View Drive and

---

2     Henceforth, appellant uses "the Tahoe" to refer to its driver.

South Woodman Street, and turned right again, still in a residential area. (5RT 1214-1216.)

"The Tahoe then entered the 54 freeway, doing up to 79 miles per hour (mph) in a 65 mph zone. (5RT 1217.) "Approximately more than five" other patrol vehicles (5RT 1218), as well as a police helicopter, or ABLE (Airborne Law Enforcement), joined in the pursuit of the Tahoe (5RT 1272- 1273, 1293). From the 54 freeway, the convoy entered the 805 freeway. (5RT 1218.) At that time, the traffic on the 54 and 805 7 was "pretty light." (5RT 1242.) The Tahoe never tried to pull over. (5RT 1218.) The Tahoe changed lanes at least three to four times during the pursuit. (5RT 1267.) A vehicle in the right lane would have to change lanes in order to remain on the freeway. (5RT 1280.)

"The pursuit lasted at least eight miles and approximately 13 minutes. (5RT 1219, 1263.) During one of the Tahoe's failures to stop at a stop sign, a vehicle nearly collided with the patrol vehicle. (5RT 1263.) Spikes were used to try to slow the Tahoe, but they were unsuccessful. (5RT 1273-1274.)

"Arriaga's field supervisor terminated their pursuit for safety concerns, and because they knew where appellant lived. (5RT 1218-1219, 1274-1275.) The officers went into "tracking mode" for up to two miles, where emergency lights and sirens are turned off and officers follow the suspect vehicle from a safe distance. (5RT 1219, 1265-1266, 1275.) The officers hoped that the Tahoe would pull over or stop, but it did not. (5RT 1275- 1276.) The officers stopped tracking when the ABLE could not track due to weather. (5RT 1244, 1309.)

"The Tahoe's traffic violations—failure to stop at two stop signs, failure to stop at a stop (red?) light, and speeding, are each offenses that result in a point on one's license record. (5RT 1242, 1312.) There were times during the pursuit where the Tahoe was driving at or under the speed limit. (5RT 1241,

4

1280-1281.) The Tahoe could be said to be going with the flow of traffic for "a lot of the driving in both the 54 and the 805." (5RT 1278-1279.)

"Although Arriaga had never seen appellant before the trial, his license photo was a match. (5RT 1243.) The license plate number of the Chevy Tahoe was 8ZON675. (5RT 1243.) Officer Stephen Truong of SDPD verified that the license plate number was a Chevy Tahoe registered to Nicholas Haley Newsum. (5RT 1248-1251.)

"On September 17, 2024, Officer Kostya Romanenko of the San Diego Sheriff's Department was on patrol. (5RT 1313-1314.) He located a tan Chevy Tahoe in a San Diego County beach parking lot. (5RT 1314, 1316.) He arrested appellant, the Chevy Tahoe's registered owner, on an outstanding warrant. (5RT 1315.) No one else in the parking lot was near or inside the Chevy Tahoe. (5RT 1317.)"

## DISCUSSION

As we have noted, appellate counsel has filed a *Wende* brief and asks the court to independently review the record for error. To assist the court in its review and in compliance with *Anders v. California* (1967) 386 U.S. 738 (*Anders*) counsel has identified two possible issues that were considered in evaluating the potential merits of this appeal.

Does Vehicle Code section 2800.2, subdivision (a) create an unconstitutional mandatory presumption?

Did the trial court err in failing to instruct the jury on the lesser included offense of failure to yield?

We have independently reviewed the record as required by *Wende* and *Anders*. We have not discovered any arguable issues for reversal on appeal. Competent counsel has represented Newsum in this appeal.

5

DISPOSITION

The judgment is affirmed.

HUFFMAN, J.*

WE CONCUR:


McCONNELL, P. J.


RUBIN, J.

---

*    Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.